The Judges pronounced their opinions.
JUDGE TUCKER.
On a former day of this term, Mr. Leigh, a gentleman who has practised as an attorney and counsel for several years in the District Courts, County Courts, and Court of Chancery, made a motion to be permitted to practise in this Court; a question was propounded, whether he must take the oath prescribed by the act of the last session for the suppression of duelling. I was of opinion that he could not be permitted to practise in this Court without taking that oath. My opinion was founded upon these principles : that an attorney at law is a public officer; that his license is only an inchoate step to office; that he becomes an officer in that Court only in which he qualifies as the law directs; that his admission to practise in one Court does not authorize him to practise in any other Court, without the permission of such other Court, and taking the same oaths therein as if he had never been permitted to practise in any other; that such an admission was equivalent to an appointment, inasmuch as he thereby becomes an officer of that particular Court: that the policy of the act for suppressing duelling extended as well to such officers, as to any other officer under this Commonwealth.
I have attended to the arguments which have been since offered by Mr. Leigh, in opposition to that opinion, and have examined such of the authorities cited by him as I could get access to. Hurst’s case, Raym. 56, 94, which it is the same case as in 1 Lev. 75; 1 Sid. 94; 1 Keb. 349, 354, 387, 558, 675, not to mention the authority of Judge Blackstone, 3 Comm. 26, clearly proves, that in England an attorney at law is considered as a public officer; otherwise a mandamus would not lie to restore him. The whole context of our act concerning counsel and attorneys at law, *188 between whom there is no distinction in this country, proves the same thing to my apprehension. They are subject to penalties to which no private citizen could possibly be subjected. Let a single example suffice: the lawyers practising in the inferior Courts may demand for an opinion ■or advice, where no suit is brought, or prosecuted or defended by the attorney 480 giving such *advice, but not otherwise, one dollar and sixty-seven cents; those in the General Court three dollars and fifty-eight cents, for advice, under the same restrictions. And every lawyer, exacting, taking, receiving or demanding any greater fee, or 'other reward, is subjected to a heavy penalty. Under what colour or pretext could the Legislature impose a penalty on any other than a public officer, for demanding and receiving a hundred or a 'thousand" dollars, or any other sum whatever, for giving his advice to any person willing to pay for it?
If, then, the office of an attorney or counsel at law be a public office, it must be an office or place under the Commonwealth; which brings it within the words of the act. It matters not by whom the appointment may be conferred, or in what manner the investiture is made: whether the Legislature, the Executive, or the Court appoints or admits to an office, the office or place is held or exercised under the authority of the Commonwealth.
On the point of unconstitutionality, I never have doubted, nor ever shall controvert, the power of this Court to consider and decide whether any act of the Legislature be contrary to the Constitution of the State, or of the United States or otherwise. My reasons and opinions on this subject have long been before the public. I shall not, therefore, repeat them. But on the present occasion, I have not felt, nor do I feel, the smallest doubt of the constitutionality of the act in question; the object of which appears to me the prevention of a great moral and growing evil; and the provisions of it, so far as I have had occasion to consider them, well calculated to advance the benefit of society, and suppress the evil.
I therefore feel no reason to depart from the opinion which I first delivered, that the oath prescribed by that act must be taken by every gentleman who may wish to practise in this Court, previous to his admission.
JUDGE ROANE-
I had seen cause to doubt of the correctness of the sudden and off-hand opinion given in this case, long before I had heard Mr. Leigh’s argument. That opinion was formed and delivered upon an insulated view of the subject, and under circumstances which precluded a due consideration of the question. I shall ever deem it more honorable, as it is, undoubtedly, more useful, to retract than to adhere to a hasty or incorrect opinion.
*An attorney is defined to be one who is set in the place of another, and he is either public, as an attorney at law, or private, as being delegated to act for another, in private contracts or agreements, (1 Bac. 287; Co. Litt. 52.) With respect to these public attorneys, or attorneys at law, in order to ensure a due degree of probity and knowledge in their profession, so indispensable to persons acting in that character, none are permitted to act as such but those who are allowed by the Judges to be skilled in the law, and certified by the Court of the County of their residence to be persons of honesty, probity and good demeanour. As a further guard against improper practices in their profession, they are required to take the oath prescribed by the act upon this subject. But for the injury arising to the public in general from the want of skill in the profession, and the danger of abuses on the part of persons whose profession peculiarly enables them thereto, no legislative inference would be necessary to distinguish these public attorney's from the private attorneys before mentioned; nor, on any onher ground, would it be just to abridge the general right of our citizens to employ any person whatsoever, as their attorney, at their pleasure. Having obtained the sanction of these two tribunals, touching these two particulars, an attorney is licensed or allowed to practise; and the Courts have also a continuing control over them, with power to revoke their licenses for unworthy practices or behaviour: But the licensing Judges cannot be said to “elect” or “appoint” an attorney: He can, perhaps, only be said, to be “appointed” by the particular clients who, after he is licensed, may severally employ him. This result is entirely justified by a view of the act “concerning attorneys at law and counsel,” 1 Rev. Code, 95, in which these functionaries are nowhere said to be “elected” or “appointed,” either by the government or the licensing Judges, nor are their functions anywhere called or designated as “offices”" in the act, except in the form of the oath prescribed to be taken; and even there, that term may well be taken in a general and extended sense, as synonymous with “duty. ” The act, it is true, prescribes an oath to be taken as aforesaid, previous to being allowed to practise; but that can only be considered, as I have before said, as an additional security for the good conduct of the attorney: It would be too much to say, that this single circumstance of precaution (any more than those of the license and certificate of the County 482 Court *before mentioned) shall exalt that functionary into an “officer,” when he is neither said in the law to be “appointed” to any office, nor to hold any office, and when he receives no salary or emolument, except the fees which individual citizens may please to give him. If this single circumstance should be construed to have that effect, it might be equally argued to have a similar effect, in relation to jurors, or others who are obliged to incur the obligation of a similar sanction, before they are permitted to officiate.
It is not necessary, in this case, to consider whether, and in what degree attorneys are considered in this country (as they are in England) officers of their respective Courts; though it is easy to see that an attorney, in this country, not having as many privileges as the English attorneys, *189 in consideration of which, that character is there holden to attach, a difference may probably exist in this country, in this particular; nor is it necessary to consider the operation of the act, as relative to the Attorney-General and his deputies, and other attorneys for the Commonwealth, who are all “elected” and “appointed” to their several officers, and receive an annual salary for their services. Even admitting, therefore, that attorneys are, in some sense, and in some degree, officers of their several Courts, as they are held to be in England, the question still recurs, are they officers within the meaning of the act to suppress duelling?
However laudable the object of the act to suppress duelling may be, it is still a highly penal law, and must be construed strictly. It is unusually penal, if not tyrannical, in compelling a person to stipulate upon oath, by the 3d section, not only in relation to his past conduct, and present resolution, but also for the future state of his mind, and his future conduct, with respect to the offence in question, under all possible circumstances; a stipulation which many conscientious persons, however prepared to take the oath as it regards the time present, might well hesitate to enter into. Thus premising that this act is highly and unusually penal, I will, under the influence of the rules for construing penal statutes, proceed to apply it to the case before us.
In making a construction upon this act, we must have an eye to every part of it; we must particularly have reference to the 2d section as well as the 3d; they both relate to precisely the same offence, (the giving or accepting a challenge,) 483 and go to the disability *of the same persons only. They differ only in this, that the last clause goes beyond the former, in requiring a pledge that the persons therein contemplated will never, in future, be engaged in duelling.
The 2d section declares that a person accepting a challenge, &c. “shall be incapable of holding or being ‘elected’ to any post of profit, trust, or emolument, civil or military, under the government of this Commonwealth.” It relates as well to persons now in office, as to those to be elected thereto, and we are to construe those of the former class, designated under the term “holding,” as standing on a common foundation with the latter, i. e. that the former must have been elected as well as the latter must, of necessity, be elected. This part of the clause, in both its branches, excludes attorneys at law, who, I have endeavoured to shew, are neither “elected” nor “appointed” to office, but are merely permitted to practise, by those who are constituted by law judges of their character and qualifications respectively. Again, this clause only extends to those who hold “a post of profit, of trust or emolument, civil or military, under the government of this Commonwealth.” Admitting (which is the most that can be granted) that attorneys are to be considered as “officers,” they are only considered, even in England, as I have before said, as officers of their respective Courts. (1 Bac. 287.) They do not, therefore, come up to the desideratum of this act; they are not officers under the government of the Commonwealth. There is no just ground on which we can erect, by implication or construction, into governmental officers, those who, in England, are not exalted to that character, and who, in the only books and doctrines handed to us on the subject from that country, are held, at most, to be mere subordinate officers of their respective Courts. But, if attorneys could be even considered as officers of the government, they do not hold an office of profit or emolument under the government; (or, in other words, a lucrative office;) otherwise they would have been excluded from a seat in the Eegislature by the provisions of the Constitution; which has never been done nor attempted in relation to mere attorneys, however it may be as to those who are “appointed” to prosecute for the Commonwealth, and receive a salary therefor. This section, therefore, relating oniy to persons “elected” to office, which attorneys are not; to persons who are officers under the government of the Commonwealth, 484 in which ^predicament attorneys do not stand; or to persons holding lucrative offices, which has never been considered as being the situation of mere attorney's at law, however gainful their practice may be, does not extend to persons of that character.
The phraseology of the 3d section varies somewhat from that of the 2d; but it is. only a variation in words, not in substance. The office or place which it contemplates is. one which equally requires an “appointment;” and is to be an office or place “under the Commonwealth,” and not under an individual Court of Justice. These criteria, exclude attorneys at law, as completely as. those contained in the former clause under a varied form of expression. In addition to this, the words of the oath itself prescribed by this clause, “during my continuance in office,” seem to indicate those public offices which are held by commission, or appointment, and are wont and proper to-be resigned; they do not naturally apply to a function .which is never resigned or formally given up, which it is the right of one citizen to exercise at the request and for the benefit of another, and in respect to which the regulating hand of the Legislature has only interposed, for the salutary purposes before mentioned.
This construction of the duelling act, in this particular, is both supported, as aforesaid, by the cotemporaneous and continued construction by’ both hovtses of Assembly, admitting attorneys to a seat in the Eegislature, notwithstanding the provisions of the 14th section of the Constitution excluding therefrom those who hold lucrative offices; and by the construction upon the act of December, 1778, c. 37, (1 Rev. Code, p. 40,) and that of January, 1799, (1 Rev. Code, p. 392,) disabling certain officers off the general government from holding offices under the government of this Commonwealth. By the last of those acts, it is enacted, that all persons holding or accepting “any office or place, or any commission or appointment whatsoever, civil or military, under the authority of the United *190 States, whether any pay or emolument be attached thereto, or not” shall be “incapable of being elected to, or of holding any office, legislative, executive or judicial, or any other office, place, or appointment of trust or profit, under the government of this Commonwealth.’’ Although these words are undoubtedly as extensive as those occurring in the duelling law now before us, it has never been pretended (although, if attorneys when they practise in the 485 *State Courts thereby become officers of the Commonwealth, they equally become officers of the general government when they practise in the Federal Courts) that the attorneys practising in the latter Courts cannot also practise in the former. On the contrary, the sanction of this Court, as well as of all the other Courts in the Commonwealth, has been given to this permission; and thus, a construction has been universal, in this country, in cases entirely analogous to the one before us; which, as well as those mentioned by Mr. Leigh, upon analogous cases in England, completely settles the present question. My opinion, therefore, is, that a mere attorney at law, or counsel, is under no obligation to take the oath in question previous to his being admitted to practise in the Courts of this Commonwealth.
As to the question of the constitutionality of the act to suppress duelling, the foregoing view of the case renders it unnecessary for me to say any thing upon it. I do not see, however, at present, that it can be deemed unconstitutional, as it relates to the qualification of attorneys at law, or counsel; unless, indeed, it be on the broad ground of the injustice, if not tyranny, of compelling a man to swear, in advance, that he will not for a given time do or forbear to do any given act; a thing which tender and scrupulous consciences, however resolved at present, might well hesitate to do. With respect to any questions which may arise upon this act in future, in relation to persons elected into the Legislature or the privy council, touching the power of the Legislature to abridge and circumscribe the number of those from whom the people have reserved to themselves the right to make their elections into those important stations; they will remain to be decided by the proper tribunals when they occur, upon full and solemn deliberation; whether the act before us falls within this description, and whether it be censurable, or not, on the ground of abridging the just and constitutional rights of the people, through the medium of an agent, who as yet has committed no offence whatsoever, when, undoubtedly, the Legislature only meant to impose a penalty upon the offender himself; will be .then to be considered and decided. At present I am very far from having any conclusive opinion upon it.
JUDGE FLEMING.
The act under consideration being a compulsory law, (however salutary it may be,) imposing on 486 the officers xof government an oath unknown to the former laws of the state, or of the United States, although there be no pecuniary penalty inflicted on those who refuse to take the oath therein prescribed, I cannot but consider it as a penal statute, and, as such, must give it a strict interpretation. It appears to me, therefore, that practitioners of the law are not comprehended in the act, under these words; “every person who shall be appointed to any office or place, civil or military, under the Commonwealth, shall, in addition to the oath now prescribed by law, take the following oath,” &c. The practice of the law is a profession which every citizen of the State, having complied with certain requisites of the act of 1792, c. 71, may take up, engage in, and exercise, according to his own will and pleasure; and which he may lay down, and resume, as often as to him may seem convenient, without any responsibility for his conduct in so doing. The language or wording of the latter sentence in the oath, evinces, to my mind, that the practitioners of the law were not in the contemplation of the Legislature. The officer taking the oath, after swearing “that he hath not been engaged in a duel, by sending or accepting a challenge to fight a duel, or by fighting a duel, or in any other manner in violation of the act, since the passage thereof,” is further to swear, that “he will not be so concerned, directly or indirectly, in such duel, during his continuance in office;” which, in my conception, has no allusion to practitioners of the law; but, admitting they are comprehended in the act, it has, or ought to have, a prospective, and not a retrospective, operation ; and cannot affect officers of any description, appointed to office prior to the passage of that act; which I construe as if the phraseology of the clause had been thus; “every person, who, after the passing of this act, shall be appointed to any office, civil or military, under this Commonwealth, shall take the oath, &c. as therein prescribed.” And I cannot conceive that a practitioner of the law of nine or ten years’ standing, qualifying to exercise his profession in a Court where he had been unused to practise, can be an appointment to an ‘ ‘office, civil or military, under the Commonwealth.” I am, therefore, of opinion, that Mr. Leigh may be admitted to practise at this bar without taking the oath prescribed by the act to suppress duelling.
Mr. Leigh was therefore admitted without taking the oath.